```
        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

**MATTHEW MICHAEL KEATING**                                                   PLAINTIFF

        v.        Civil No. 08-5243

**SHERIFF TIM HELDER, Washington County, Arkansas; RANDALL DENZER, Jail Administrator, Washington County Detention Center; CORPORAL NATHAN MATTHEWS; DEPUTY CODY STOUT; NURSE SHIRLEY MOSS; SGT. MISTY CHARLES; SGT. MICHAEL CAMBRON; SGT. J. FULLER; SGT. S. BREWER; CORPORAL T. MUGGY; SGT. SCHMIDT; DEFENDANT WHITEHOUSE; CHARLES DOBBS; DEPUTY WILLIAM HURLEY; DOYLE SHARP; KEVIN EAST; LT. MASON; BRAD MORGAN; and CHAD MORGAN**                                                   DEFENDANTS

## MEMORANDUM OPINION

Now on this 23rd day of August, 2011, comes on for consideration the **Report And Recommendation Of The Magistrate Judge** ("R&R") (document #68), and **Washington County Defendants' Objections To Report And Recommendation** ("Objections") (document #69), and from these documents, the Court finds and orders as follows:

1.   Plaintiff Matthew Michael Keating ("Keating") brought this action pursuant to **42 U.S.C. § 1983**, challenging various conditions of his confinement at Washington County Detention Center ("WCDC").  United States Magistrate Judge Erin L. Setser conducted an evidentiary hearing on Keating's claims, and issued the R&R now under consideration.

2.  The recommendations of Magistrate Judge Setser are as follows:

*   that Keating's claims against defendants Cody Stout, Shirley Moss, Misty Charles, Brandon Whitehouse, Charles Dobbs, Brad Morgan, Chad Morgan, Lori Schmidt Wilson, Deputy Hurley, Deputy Sharp, Deputy East, and Lieutenant Mason be dismissed;

*   that Keating's claims of unreasonable search, unconstitutional conditions of confinement, and interference with mail be dismissed; and

*   that Keating be awarded judgment on his due process claim in the amount of $11.00 nominal damages, plus his $350.00 filing fee, against defendants Sheriff Helder ("Helder") and Major Denzer ("Denzer") in their official capacities and against defendants Denzer, Corporal Matthews ("Matthews"), Sergeant Cambron ("Cambron"), Sergeant Fuller ("Fuller"), Sergeant Brewer ("Brewer"), and Corporal Muggy ("Muggy") in their individual capacities.

3.  Helder, Denzer, Matthews, Cambron, Fuller, Brewer, and Muggy (collectively "Defendants") object to the recommendation that Keating receive judgment against them on his due process claim.

Defendants make two objections: first, that the due process violations found by Magistrate Judge Setser amount to nothing more than negligent conduct, which will not support a claim under **42**

**U.S.C. § 1983**, and second, that if Helder and Denzer are liable in their official capacities on a failure to train theory, the remaining Defendants cannot be liable on a deliberate indifference theory.

    4.   There is no dispute about the facts which emerged at the evidentiary hearing conducted by Magistrate Judge Setser, and the Court summarizes them here to form the background for its analysis of Defendants' objections:

    *   WCDC has a written policy on inmate discipline (the "Policy"), which provides, in relevant part, as follows:

> 1.b. Officers shall inform the Jail Administrator <u>in writing</u> whenever disciplinary actions are taken. Incident reports shall include, the facts of the offense, the date and time, witness's names, and the officer's (s') actions....
>
> 1.f. All disciplinary actions shall be reviewed by the facility administrator and an informal hearing conducted in accordance with this section if the situation warrants....
>
> 6.a. Any disciplinary action taken by an officer against a detainee shall be reviewed by the shift supervisor. If the detainee wants to appeal, he/she shall appeal to the jail lieutenant. If the action(s) of the jail lieutenant are unsatisfactory to the detainee, he/she may appeal to the jail captain. If that appeal is not satisfactory to the detainee, an appeal my be taken to the Sheriff for review.

    *   Keating was arrested on June 17, 2008, charged with "Possession of Drug Paraphernalia w/Intent to Manufacture (METH)" and Possession of a Controlled Substance, and booked into WCDC.

    *   On June 24, 2008, Deputy Hurley learned that

methamphetamine was available in S-Block of WCDC, where Keating was a pre-trial detainee. Several inmates implicated Keating as the supplier, saying that he concealed the drug in his rectum and also received it through the mail. Keating was sent to the hospital, where an x-ray and an enema failed to reveal any drugs concealed in his rectum.

 * Immediately after Keating's return from the hospital, Captain Osburn authorized locking him down[1] for ten days for "Introducing Contraband in a Controlled Facility."

 * Keating's cell was searched, and several greeting cards he had received in the mail were seized. Lieutenant Mason ("Mason") and Detective Hulsey ("Hulsey") wrote incident reports indicating that a drug-sniffing dog alerted on the cards, and that paper shavings from one tested positive for the presence of methamphetamine. The weight to be given to both the testimony and the reports of Mason and Hulsey is considerably diminished by the fact that the reports did not turn up until the day of the evidentiary hearing.

 * On June 25, 2008, Matthews wrote up the Disciplinary Report of the previous day's incident, even though Matthews had no personal knowledge about it. Matthews' report does not include the facts of the offense, the date and time it supposedly

---

[1] Lockdown involves confinement to a cell 23 hours a day, and loss of commissary and visitation privileges and reading and writing materials.

occurred, or the names of witnesses[2]. In fact, the Disciplinary Report does not find Keating guilty of any misconduct. Instead, it states that there is "suspicion" of Keating "introducing a controlled substance into the facility," and an "ongoing investigation." It recommends that Keating be locked down for ten days "until further notified."

  *   Matthews did not give Keating a copy of the Disciplinary Report.

  *   Cambron, the Shift Supervisor, signed off on Matthews' report, despite its obvious failure to comply with the Policy.

  *   Although the Disciplinary Report had a box checked indicating that Keating had been "notified of the right to file a disciplinary appeal in writing to the Disciplinary Review Board," Matthews did not recall telling Keating of his right to appeal, and Keating testified that he was not aware of any such right.

  *   No copy of Matthew's report was provided to Denzer, the Jail Administrator. Denzer received a copy of Hurley's Incident Report, but he did not receive even this until "a day or two after the incident." Denzer did nothing to ensure that the Policy was followed or that Keating received due process in connection with the lockdown.

  *   The Disciplinary Review Board, which consisted of

---

[2]Coty Stout signed the Disciplinary Report in the line for "Witness Signature." It does not appear, however, that Stout was a witness to anything other than the report itself.

Fuller, Brewer, and Muggy, did not review Keating's disciplinary lockdown until June 29, five days after he was locked down. According to Denzer, this type of delay was routine.

* The Disciplinary Review Board agreed with the recommended ten days' lockdown. Its members were not informed that no methamphetamine was found on Keating at the hospital. They were told that drug residue was found on some of Keating's mail, but had no documentation to that effect. Fuller acknowledged that the Disciplinary Review Board did not conduct a thorough investigation.

* Denzer testified that the written disciplinary Policy did not accurately reflect actual disciplinary practice at WCDC. He also conceded that there was insufficient information to lock Keating down, and that it was a mistake for the Disciplinary Review Board to fail to review the lockdown for six days.

5. In light of the foregoing, the Court turns to Defendants' objection that the due process violations found by the Magistrate Judge amount to nothing more than negligent conduct, which will not support a claim under **42 U.S.C. § 1983**.

**Section 1983** provides for civil liability against a person acting under color of state law who deprives a citizen of any constitutional right. "A § 1983 plaintiff must prove (1) the violation of a constitutional right, (2) committed by a state

actor[3], (3) who acted with the requisite culpability and causation to violate the constitutional right." **Hart v. City of Little Rock**, 432 F.3d 801, 804 (8th Cir. 2005).

    6.    Defendants do not dispute that Keating was deprived of due process in connection with his disciplinary lockdown. Under the Due Process Clause of the Fourteenth Amendment, a state pre-trial detainee such as Keating cannot be punished for a disciplinary infraction without due process of law.  The minimum requirements of due process in this context have been outlined as follows:

> In a prison disciplinary proceeding, the prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with correctional goals and safety, to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact finder and the reasons for the disciplinary action.  The written notice must be adequate to enable the accused prisoner to marshal the facts and prepare a defense.

**Dible v. Scholl**, 506 F.3d 1106, 1110 (8th Cir. 2007) (internal citations and quotation marks omitted).  See also **Hartsfield v. Nichols**, 511 F.3d 826, 830 (8th Cir. 2004), summarizing the requirements set out by the Supreme Court in **Wolff v. McDonnell**, **418 U.S. 539 (1974):**

> ...written notice of the charges; a brief period ... to prepare; a written statement of the evidence relied on and reasons for the disciplinary action; and the ability for the inmate to call witnesses and present documentary evidence.

---

[3]There is no dispute that the Defendants acted under color of state law.

**511 F.3d at 830** (internal quotation marks omitted).

Keating did not receive written notice of the charges against him, the evidence against him with respect to them, or the reasons for his punishment.  He also was not given an opportunity to defend himself and, in fact, was punished without having been found guilty of an infraction.  As Matthews' Disciplinary Report stated, Keating was locked down on nothing more than "suspicion" and an "ongoing investigation."  These actions violated Keating's constitutional rights.  A pre-trial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law."  **Bell v. Wolfish**, 441 U.S. 520 (1979).

7.   The accepted standard for "requisite culpability" under **§ 1983** is not negligence, but deliberate indifference, which is established only if there is actual knowledge of a substantial risk of constitutional violation and a defendant disregarded that risk by intentionally failing or refusing to take reasonable measures to deal with the problem.  **Daniels v. Williams**, 474 U.S. 327 (1986); **Szabla v. City of Brooklyn Park, Minnesota**, 486 F.3d 385, 398 (8th Cir. 2007).

Deliberate indifference is something more than negligence but less than actual intent to harm.  It requires showing that a defendant was aware of facts from which the inference could be drawn that there was a risk of constitutional violation, and that he actually drew the inference.  **Farmer v. Brennan**, 511 U.S. 825,

**837 (1994).** "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* **at 842.**

The Court notes the following facts which are essentially undisputed:

*   Denzer knew that the written disciplinary Policy did not reflect actual disciplinary practices at WCDC.  Denzer also knew that Keating was being disciplined, but did not recall seeing the Disciplinary Report that the Policy required him to receive.

*   Matthews wrote a Disciplinary Report that omitted facts, date, time, and witnesses, in direct violation of the Policy, and recommended that Keating be punished without any finding of guilt.

*   Cambron signed off on the Disciplinary Report despite its obvious failure to comply with WCDC policy, and despite its recommendation that Keating be punished without any finding of guilt.

*   Fuller, Brewer, and Muggy agreed with the recommended punishment, even though they had no evidence of guilt other than being told that drug residue was found on some of Keating's mail. This, of course, could have been the result of a contaminated correspondent rather than drugs being placed in the cards.

Fuller, Brewer, and Muggy did not do a thorough investigation.

The Court finds the circumstantial evidence convincing on the issue of whether Denzer, Matthews, Cambron, Fuller, Brewer, and Muggy knew that Keating's due process rights either would be, or were being, violated in connection with the lockdown. Denzer knew his staff was not following WCDC Policy, and his staff punished a pre-trial detainee without any underlying finding of guilt, in violation of specific written Policy of their employer.

This conduct is more than negligence. In the Court's view it satisfies the deliberate indifference standard of culpability. Defendants' first objection will, therefore, be overruled.

8. Defendants also contend that if Helder and Denzer are liable in their official capacities on a failure to train theory, the remaining Defendants cannot be liable on a deliberate indifference theory. Without citing any authority, Defendants simply argue that "it would be logically and legally inconsistent to concurrently hold that the individual officers, without being trained, actually knew of the risk of a deprivation."

The Court does not agree. "A prison official may be held liable to a detainee if . . . his failure to train or supervise the offending actor caused the violation." **Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007).** Denzer admitted that WCDC did not follow the Policy, and the facts reflect that it was not being followed. Denzer, as Jail Administrator, and Helder, as Sheriff,

were responsible for "managing the . . . operation of their . . . facilit[y] in compliance with the laws and . . . within the requirements of the United States Constitution." **A.C.A. § 12-41-503(a).** The Court concludes, therefore, that Helder and Denzer are liable in their official capacities for failing to train their subordinates to follow the Policy.

It does not necessarily follow from the foregoing finding, however, that Matthews, Cambron, Fuller, Brewer, and Muggy were ignorant of the Policy. The Policy is included in the official Washington County Detention Center Policy Manual, and it is reasonable to infer that employees are aware of what is in their employer's official policy manual.

The training issue here is not failure to inform the employees that the Policy existed, but failure to train them that they were expected to follow it. More is encompassed in the notion of "training" than simply making one's employees aware of a policy -- it is incumbent upon superiors to train their subordinates that written policies are not mere window dressing -- they are institutional practices the employees are expected to follow. Were the law otherwise, the mere placing of an acceptable policy on the books would insulate Washington County from liability.

For these reasons, the Court sees no inconsistency in a finding that Helder and Denzer -- in their official capacities as

Sheriff and Jail Administrator respectively -- are liable to Keating for failure to train their subordinates to provide due process in a disciplinary context, and a finding that those subordinates were deliberately indifferent to the risk that Keating's right to due process would be violated. Defendants' second objection will, therefore, be overruled.

**IT IS THEREFORE ORDERED** that **Washington County Defendants' Objections To Report And Recommendation** (document #69) are **overruled.**

**IT IS FURTHER ORDERED** that the **Report And Recommendation Of The Magistrate Judge** (document #68) is **adopted *in toto*.**

**IT IS FURTHER ORDERED** that Matthew Michael Keating's claims against Cody Stout, Shirley Moss, Misty Charles, Brandon Whitehouse, Charles Dobbs, Brad Morgan, Chad Morgan, Lori Schmidt Wilson, Deputy Hurley, Deputy Sharp, Deputy East, and Lieutenant Mason are **dismissed.**

**IT IS FURTHER ORDERED** that Matthew Michael Keating's claims of unreasonable search, unconstitutional conditions of confinement, and interference with mail are **dismissed.**

**IT IS FURTHER ORDERED** that plaintiff Matthew Michael Keating be awarded judgment -- to be entered by separate document in accordance with **F.R.C.P. 58(a)** -- in the sum of $11.00, plus his costs in the amount of $350.00, jointly and severally from defendants Tim Helder, Sheriff of Washington County, Arkansas and

Randall Denzer, Jail Administrator of Washington County Detention Center, in their official capacities, and from defendants Randall Denzer, Corporal Matthews, Sergeant Cambron, Sergeant Fuller, Sergeant Brewer, and Corporal Muggy in their individual capacities.

**IT IS FURTHER ORDERED** that if any portion of the filing fee in this case has been paid through deductions from the inmate account of Matthew Michael Keating, the Clerk of Court refund that amount to Keating.

**IT IS SO ORDERED.**

                                        **/s/ Jimm Larry Hendren**
                                        **JIMM LARRY HENDREN**
                                        **UNITED STATES DISTRICT JUDGE**